UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL J. ALBERT, SR., | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | 1:14-cv-00440-JCN |
| | ) | |
| BENJAMIN J. MURTIFF, et al., | ) | |
|     Defendants | ) | |

**MEMORANDUM OF DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**[1]

In this action, Plaintiff Michael J. Albert, Sr. alleges that Defendants Benjamin Murtiff and Vincente Morris arrested him without probable cause and used excessive force to arrest him. The matter is before the Court on Defendants' Motion for Summary Judgment ("Motion," ECF No. 24).[2] Following a review of the record, and after consideration of the parties' arguments, the Court grants in part and denies in part the motion.

**BACKGROUND**[3]

Christian Carson is a member of the staff of the Bread of Life veterans' shelter in Augusta. On August 4, 2012, Mr. Carson observed Plaintiff behaving in a loud and confrontational manner

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge John C. Nivison conduct all proceedings in this case, including trial, and to order entry of judgment.

[2] Defendants Morris and Murtiff are the only remaining defendants. Plaintiff voluntarily dismissed his claims against the municipal defendant, the chief of police and Doe defendants. (Report of Pre-Filing Conference Under Local Rule 56(h), ECF No. 15.) As determined at the Local Rule 56(h) pre-filing conference, "[t]he remaining claims include claims of unlawful arrest, excessive force, conspiracy, and punitive damages." (*Id.* ¶ 3.)

[3] The facts are derived from the summary judgment record. Defendants contend that Plaintiff has not properly controverted some of Plaintiff's statement of facts as required by Local Rule 56. The Court is mindful of the need for parties to comply with the requirements of the Rule. As part of its review of the record, however, the Court reviewed the transcripts of the parties' deposition testimony. Regardless of whether Plaintiff properly controverted all of Defendants' statements, the Court does not believe it is appropriate to ignore material facts that might controvert Defendants' assertions if the Court learns of the facts as the result of its review of the parties' deposition testimony. *Ricci v. Applebee's Ne., Inc.*, 297 F. Supp. 2d 311, 321 (D. Me. 2003), *decision clarified,* 301 F. Supp. 2d 51 (D. Me. 2004). The facts set forth herein are based primarily on the parties' statements of material facts and the parties' deposition testimony, regardless of whether the testimony was specifically or properly cited in the statements of fact or in the parties' oppositions to the statements.

toward another veteran at the shelter. When Mr. Carson attempted to subdue Plaintiff, Plaintiff became confrontational and disrespectful toward Mr. Carson as well.

Mr. Carson then told Plaintiff that he needed to leave the shelter. After making repeat (two or more) requests for Plaintiff to leave, Mr. Carson told Plaintiff to leave the shelter. (Albert Dep. at 28:9–11; Carson Dep. at 15:20–21.) Plaintiff stated he would only leave for a good reason or if the police told him to leave. (Albert Dep. at 28:11–18.) Mr. Carson called the Augusta Police to report a disturbance and that someone needed to be removed from the property.

Sergeant Vincente Morris, Officer Benjamin Murtiff, and at least one other officer responded to the scene. In the presence of one or more officers, Mr. Carson again told Plaintiff to leave the property. (Albert Dep. at 36: 9–18.) Plaintiff did not leave the property. One of the officers told Plaintiff that he would be arrested if he did not leave. According to Plaintiff, he rose from the table to leave, but Defendants immediately arrested him by taking him forcefully to the ground.[4]

Defendants Morris and Murtiff were both involved in taking Plaintiff to the ground. Each Defendant held one of Plaintiff's arms, and they handcuffed Plaintiff while he was on the ground. Plaintiff asserts that while he was on the ground, an officer knelt on his head, and that he suffered a significant shoulder injury as the result of the manipulation of his left arm.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary

---

[4] The record suggests that Plaintiff was taken to the ground outside the shelter. Plaintiff argues that he went down on pavement and Defendants assert that he went down on grass.

judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, there exists a trial-worthy controversy and summary judgment must be denied as to the supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

Plaintiff claims that Defendants violated his fourth amendment rights by arresting him in the absence of probable cause and by using excessive force to seize his person (Count I). Plaintiff also alleges a civil conspiracy to violate his rights (Count II) and requests an award of punitive damages (Count III).

> Pursuant to 42 U.S.C. § 1983:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).[5]

**A.    Probable Cause to Arrest**

The Fourth Amendment prohibits unreasonable searches and seizures, and provides that no warrant shall issue except on a showing of "probable cause, supported by oath or affirmation." U.S. Const. amend. IV. An exception to the warrant requirement exists when an officer makes an arrest for a crime committed in the officer's presence. *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008). Maine law similarly permits a law enforcement officer to arrest "[a]ny person who has committed or is committing in the officer's presence any Class D or Class E crime." 17-A M.R.S. § 15(1)(B).

Whether an officer had probable cause to arrest is assessed in light of the totality of the circumstances, and is evaluated in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates,* 462 U.S. 213, 230 – 31 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). Probable cause for an arrest exists if, "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that [the individual] had committed or was committing a crime." *United States v. Torres-Maldonado*, 14 F.3d 95, 105 (1st Cir. 1994).

---

[5] In this case, the parties do not dispute whether Defendants were acting under the color of state law at the time of the incident about which Plaintiff complains.

Defendants argue that the undisputed facts establish that on August 4, 2012, they had probable cause to arrest Plaintiff for criminal trespass. (Motion at 4.) Under Maine law:

> A person is guilty of criminal trespass if, knowing that that person is not licensed or privileged to do so, that person:
> ...
> D. Remains in any place in defiance of a lawful order to leave that was personally communicated to that person by the owner or another authorized person. Violation of this paragraph is a Class E crime[.]

17-A M.R.S. § 402(1)(D). Ordinarily, on private premises, "[t]he mere demand of the owner constitutes a lawful order for the purposes of the criminal trespass statute." *State v. Tauvar*, 461 A.2d 1065, 1067 (Me. 1983). If the public has been invited onto private property, however, "an order to leave the premises is lawful only when the owner has some justification for requesting removal." *Id.* In this case, Plaintiff argues that the issue of probable cause is disputed because Mr. Carson did not "order" him to leave and because Defendants could not reasonably have believed that Mr. Carson had the authority to "evict" Plaintiff from the shelter. (Plaintiff's Response at 2.)

The uncontroverted facts demonstrate (1) that Plaintiff had behaved in a loud and confrontational manner toward another veteran at the shelter and then behaved in a loud and confrontational manner toward Mr. Carson when Mr. Carson attempted to subdue Plaintiff; (2) that Mr. Carson reported the disturbance to police and asked the police to assist in the removal of an individual from the property; (3) that Mr. Carson, in the presence of the officers, told Plaintiff to leave the premises, and (4) that Plaintiff failed to comply with the directive to leave the property.

Even when the evidence is viewed most favorably to Plaintiff, a reasonable officer under the circumstances would have understood that Mr. Carson had the authority to direct Plaintiff to

5

leave the Bread of Life shelter premises,[6] and would have concluded that the facts Mr. Carson reported justified his decision to ask Plaintiff to leave the property. A reasonable officer, therefore, would have directed Plaintiff to leave the property. Because Plaintiff failed to follow a lawful order to leave the property, the undisputed record evidence establishes that Defendants had probable cause to arrest Plaintiff for criminal trespass.

**B.     Excessive Force**

Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (some internal quotation marks omitted) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). Relevant factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* A court's assessment must also account for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The test is an objective test: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

---

[6] The record contains no evidence to suggest that Mr. Carson lacked the authority to exclude others as part of his duties. Because the nature of Plaintiff's conduct is not disputed, Mr. Carson's decision to remove Plaintiff was justified.

to their underlying intent or motivation." *Id.* at 397. "'Serious injury' is not a prerequisite to recovery." *Bastien v. Goddard*, 279 F.3d 10, 14 (1st Cir. 2002) (quoting *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991) (collecting cases)).

Defendants argue that the evidence cannot support a finding of excessive force. Viewing the evidence most favorably to Plaintiff, a finder of fact could reasonably conclude (1) that the conduct for which Plaintiff was arrested was not severe criminal conduct, (2) that Plaintiff did not present a threat to the officers or Mr. Carson, (3) that Plaintiff had not demonstrated any physical resistance prior to the takedown, and (4) that in addition to the force employed to take Plaintiff to the ground, while Plaintiff was on the ground and not resisting, Defendants applied force that injured Plaintiff, including force to Plaintiff's head. Contrary to Defendants' argument, therefore, an excessive force finding would be supported by the record.

Defendants nevertheless contend that they are entitled to summary judgment because Plaintiff cannot unequivocally identify who took him to the ground, who injured his arm, and who knelt on his head. (Motion at 6.) While Plaintiff could not specifically identify the individuals responsible for the physical contact, Defendants acknowledged that they took Plaintiff to the ground and placed Plaintiff in handcuffs. Although Plaintiff's inability to identify the officers with whom he interacted might be relevant to the merit of Plaintiff's claim, the fact that Plaintiff cannot specifically identify the officers with whom he interacted is not fatal to Plaintiff's claim. That is, the law does not require that a plaintiff personally identify the person(s) who engaged in the alleged unlawful conduct. Indeed, for a variety of reasons (e.g., loss of memory as the result of an injury, inability to see the individual, etc.), a claimant might not be able to identify a defendant. In such cases, the identity of the individual is established through the testimony of other witnesses or circumstantially. In this case, although Defendants deny using the degree of force alleged by

7

Plaintiff, they acknowledge that they took Plaintiff to the ground. With Defendants' acknowledgment and Plaintiff's testimony regarding the encounter, a fact finder could infer that Defendants were the individuals who engaged in at least some of the conduct about which Plaintiff complains.

Finally, Defendants argue that they are entitled to qualified immunity. More specifically, Defendants contend that they cannot be liable for the mere failure "to calibrate exactly the amount of force necessary to take into custody a resisting arrestee, even if mistaken." (Motion at 10.) "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "For example, '[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed.'" *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 81 (1st Cir. 2012) (quoting *Saucier*, 533 U.S. at 205). The constitutional prohibition against the use of excessive force has long been clearly established. *See, e.g.*, *Morelli v. Webster*, 552 F.3d 12, 23-24 (1st Cir. 2009) (describing the law in this area as "crystal clear"). The question is thus whether the "use of excessive force constituted the type and kind of erroneous judgment that a reasonable police officer under the same or similar circumstances might have made." *Id.* at 24.

A review of the record in the light most favorable to Plaintiff reveals that the evidence could support a finding that Plaintiff did not pose a threat, did not resist arrest, or stopped resisting arrest before Defendants applied the force about which Plaintiff complains,[7] including the alleged

---

[7] The law was clearly established that use of a significant level of force after a subject has ceased resisting violates the Fourth Amendment. *Jennings v. Jones*, 499 F.3d 2, 20 – 21 (1st Cir. 2007) ("Jones' use of increased force after Jennings ceased resisting violated the Fourth Amendment, the law was clearly established, and a reasonable officer in Jones' circumstances would have believed that his conduct was a violation.")

8

force to his head on pavement. The Court, therefore, cannot determine as a matter of law that a reasonable officer under the same or similar circumstances would have acted as Defendants did. At a minimum, the record contains factual disputes as to whether Plaintiff posed a threat, whether Plaintiff had resisted or continued to resist, and the degree of force employed. Accordingly, Defendants are not entitled to summary judgment based on qualified immunity.

**C.     Conspiracy**

Plaintiff alleges that Defendants conspired to interfere with his civil rights, including his equal protection rights, citing 42 U.S.C. § 1983. Defendants contend the record lacks evidence of any agreement to violate Plaintiff's civil rights. (Motion at 11 – 12.)

> A civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages. To be actionable under section 1983 the plaintiff has to prove that there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws.

*Santiago v. Fenton*, 891 F.2d 373, 389 (1st Cir. 1989) (internal quotation marks and brackets omitted); *see also Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir. 1988). A conspiracy claim can also arise as the result of an agreement to deprive a person or class of persons "of the equal protection of the laws or of equal privileges and immunities under the laws," coupled with an overt act producing injury or a constitutional deprivation, motivated by class-based discriminatory bias. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).

Here, Plaintiff has cited no record evidence, nor can the Court otherwise discern any evidence, from which a fact finder could conclude that Defendants agreed to apply a certain level of force to arrest Plaintiff. The lack of agreement precludes Plaintiff's recovery on a conspiracy claim. Summary judgment, therefore, is warranted on the conspiracy claim.

**D.     Punitive Damages**

In a § 1983 action, the proper measure of damages is determined by federal common law. *Mercado-Berrios v. Cancel-Alegria*, 611 F.3d 18, 28 (1st Cir. 2010). To recover punitive damages, Plaintiff must show that Defendants' actions were "motivated by evil motive or intent" or involved "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

As explained above, the record could support a finding that Defendants used excessive force in Plaintiff's arrest. Excessive force, in some instances, can be based on reckless or callous indifference. *Cf. Hernandez-Tirado v. Artau*, 874 F.2d 866, 869 (1st Cir. 1989) (describing assault as the sort of conduct that ordinarily could be viewed as calling "for deterrence and punishment over and above that provided by compensatory awards") (quoting *Smith*, 461 U.S. at 54). Summary judgment thus is not appropriate on Plaintiff's punitive damage claim.

## CONCLUSION

Based on the foregoing analysis, the Court grants in part and denies in part Defendants' Motion for Summary Judgment (ECF No. 24). The Court grants Defendants' motion as to Plaintiff's claim for false arrest and on Plaintiff's conspiracy claim. The Court denies Defendants' motion as to Plaintiff's claim for excessive force and Plaintiff's punitive damage claim.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 30th day of December, 2015.